In the United States District Court
Eastern District of Texas
Tyler Division

| | | |
|---|---|---|
| Kinsale Insurance Company, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action 6:19-CV-00413-JCB |
| | § | |
| ETOPSI Oil & Gas, LLC dba East | § | |
| Texas Oilfield Production Services, Inc. | § | |
| and McBride Operating, LLC, | § | |
| | § | |
| Defendants. | § | |

**Defendant McBride Operating, LLC's Motion for Summary Judgment,
and Memorandum of Law in Support**

Comes now McBride Operating, LLC, Defendant herein, who hereby makes and files this, his Motion for Summary Judgment, and Memorandum of Law in Support on the counterclaims it has brought against Kinsale Insurance Company, Plaintiff herein, and in support whereof would show unto the Honorable Court as follows:

I.
Introduction

This case is a dispute regarding insurance coverage. The insurer who issued the policy claiming that a policy protecting its insured against liability for "property damage" is subject to no less than eleven separate exclusions found in the policy.

Coverage is an issue because McBride has sued the Plaintiff's insured, ETOPSI, in state court in Texas. The suit alleges ETOPSI was hired to design and oversee the drilling of a well for McBride, but it stopped the drilling and set the casing at the incorrect depth.

Because the drilling was stopped prematurely, the well bore did not reach down into the proper subterranean formation, rendering the well valueless.

The Plaintiff filed this suit against its insured and McBride, seeking a declaration that the policy it issued covers nothing. McBride now moves for summary judgment, asking the Court to find the existence of coverage of its claims under the Plaintiff's policy.

## II.
## Statement of Issues

Whether any of the exclusions from coverage, discussed in detail below, found in the CGL insurance policy issued by the Plaintiff to ETOPSI, precludes coverage on the claim McBride has brought against ETOPSI.

## III.
## Evidence

McBride relies on the arguments made and authorities cited herein and on the evidence attached hereto and incorporated herein by reference as if set forth at length:

Exhibit A     McBride's state court petition against ETOPSI; and

Exhibit B     Plaintiff's insurance policy covering ETOPSI.

## IV.
## Statement of Undisputed Material Facts

1.     the Plaintiff issued an insurance policy for ETOPSI, Exhibit B, Doc. 1-2;

2.     McBride sued ETOPSI for negligence, breach of contract and breach of warranty, Exhibit A, Doc 1-1; and

3.     the Plaintiff brought this suit, seeking a declaratory judgment that the policy it issued did not require it to defend or indemnify ETOPSI. Doc. 1.

V.

<u>Summary Judgment Standard</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). The plain language of Rule 56(c) mandates the entry of a summary judgment, upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 323. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.*

By its terms, the standard for summary judgment under Rule 56 provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). As to materiality, the substantive law will identify which facts are material. *Anderson*, 477 U.S. at 248. Only disputes over facts that might affect the outcome

3

of the suit properly preclude the entry of summary judgment. *Id.* Factual disputes that are irrelevant or unnecessary do not preclude summary judgment. *Id.*

Rule 56(e) of the Federal Rules of civil Procedure provides, in pertinent part, that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Id.* There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598 (1970) and *First Nat'l Bank of Ariz. v. Cities Svc. Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968)).

VI.
Arguments and Authorities

The question presented is whether the CGL insurance policy the Plaintiff issued to ETOPSI covers ETOPSI's negligence in the dealings with McBride. It does, and the Court should find the existence of coverage as a matter of law. Because this is a diversity action, Texas state law will determine whether there is coverage. *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.*, 783 F.2d 1234, 1240 (5th Cir. 1986).

A.    Interpretation of Insurance Policies Generally

An insurance policy is a contract wherein the insurer agrees to cover a future unknown risk in return for the receipt of premiums. *In re Texas Assoc. of Sch. Boards, Inc.*, 169 S.W.3d 653, 658 (Tex. 2005) (orig. proceeding). The starting point for interpreting an insurance policy is the policy itself. *Progressive County Mut. Ins. Co. v. Kelley*, 284 S.W.3d

4

805, 807 (Tex. 2009). Because an insurance policy is nothing more than a written contract to cover future losses, they are interpreted using the same rules that apply to all other contracts. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017); *National Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008); *Continental Cas. Co. v. North Am. Capacity Ins. Co.*, 683 F.3d 79, 89 (5th Cir. 2012). These rules require courts to use the plain language of the policy to determine its meaning, *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017); *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015), and require all parts of the policy must be read together, and meaning given to every sentence, clause and word to avoid rendering any part of the policy inoperative. *Primo*, 512 S.W.3d at 892-93; *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998).

Language in a policy that can be given a definite or certain legal meaning is not ambiguous, and must be enforced by the court as written. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006); *Continental Cas.*, 683 S.W.3d at 89. In contrast, policy language subject to more than one reasonable interpretation is ambiguous. *Nassar*, 508 S.W.3d at 258; *RSUI Indem.*, 466 S.W.3d at 118; *Balandran*, 972 S.W.2d at 741. When interpreting ambiguous policy language, the court resolves the ambiguity by adopting a reasonable construction favoring the insured, even if the insurer's interpretation appears to be more reasonable. *RSUI Indem.*, 466 S.W.3d at 118; *National Union Fire Ins. Co. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991); *Gore Design Completions, Ltd.*

5

*v. Hartford Fire Ins. Co.*, 538 F.3d 365, 371 (5th Cir. 2008). The reason for this rule is if there is any uncertainty regarding the language of the policy, this uncertainty should not redound to the benefit of the insurer who wrote it, and is justified by the special relationship between insurers and their insured. *RSUI Indem.*, 466 S.W.3d at 118-19; *Balandran*, 972 S.W.2d at 741 n.1.

B.    Interpretation of Exclusions from Coverage

Questions about the meaning of insurance policies and the scope of coverage usually arise when the policy provides some coverage, but also contains an exclusion from coverage that narrows the scope of coverage available. The general rule holds in this case: in determining whether there is coverage, the Court will have to interpret and apply the various exclusions from coverage which the Plaintiff claims allow it to deny coverage.

If an insurer wishes to exclude a particular peril from coverage, it must do so in clear and unambiguous language, *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex. 1993); *Assicurazioni Generali, S.p.A. v. Ranger Ins. Co.*, 64 F.3d 979, 983 (5th Cir. 1995), which in turn means that when the case involves an exception or limitation to insurer's liability under a policy, a more stringent construction against the insurer is supposed required, *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987); *Lawyers Title Ins. Co. v. Doubletree Partners, L.P.*, 739 F.3d 848, 859 (5th Cir. 2014), because exceptions from liability are disfavored and are strictly construed against the insurer. *State Farm Lloyds v. Marchetti*, 962 S.W.2d 58, 61 (Tex. App. — Houston [1st Dist.] 1997, pet. denied); *Howard*

6

*v. INA County Mut. Ins. Co.*, 933 S.W.2d 212, 219 (Tex. App. — Dallas 1996, writ denied); *Gore Design Completions*, 538 F.3d at 371; *Davis-Ruiz Corp. v. Mid-Continent Cas. Co.*, 281 Fed.Appx. 267, 270 (5th Cir. June 2, 2008). When the policy in question purports to exclude something from coverage, the general rule is if the scope of this exclusion is subject to two reasonable interpretations, courts are supposed to interpret the exclusion narrowly and in favor of coverage, i.e., against the insurer and in favor of the insured, *Utica Nat'l Ins. Co. of Tex. v. American Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004); *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003), and (again) to do so even if the interpretation offered by the insurer is the more reasonable one. *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); *Farmers Ins. Exch. v. Neal*, 120 S.W.3d 493, 497 (Tex. App. — Texarkana 2003, no pet.).

C.     Exclusions the Plaintiff Asserts Preclude Coverage

Taking the exclusions the Plaintiff asserts precludes it from having to defend or indemnify ETOPSI in the order they are presented in its Complaint, a review of governing law shows that none of them apply.

1.     Exclusion for Professional Liability

The first exclusion on which the Plaintiff relies to deny the coverage its insured has paid for is an exclusion for "professional liability, malpractice, errors, or omissions or acts of any type ..." The Plaintiff's claim this exclusion applies fails for two reasons: (1) it proves too much, and, if accepted would preclude any coverage under the policy, ever; and (2) even

7

if it could apply, the law governing such exclusions makes clear they only apply when the alleged professional actions are the but-for cause of the loss, which is not the case here.

The Court should begin with the Plaintiff's own description of the policy it was issued, and what its insured was doing: "Engineers or Architects - consulting - not engaged in actual construction." Exhibit B. The Plaintiff then claims that ETOPSI's work is professional in nature, and so not covered under the policy it issued. Doc. 1, ¶¶ 18, 21-24. The Court ought to reject such a construction, because accepting it would mean the Plaintiff issued, and ETOPSI paid premiums for, a policy that does not cover anything ETOPSI does. Such an interpretation, resulting in an exclusion that would exclude all, or nearly all, coverage, must be rejected because it renders the policy illusory, *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 n. 27 (Tex. 2008); *ATOFINA Petrochemicals, Inc. v. Continental Cas. Co.*, 185 S.W.3d 440, 444-45 (Tex. 2005), a general rule that has been specifically applied in cases involving similar professional liability exclusions. *See, e.g., Gore Design Completions*, 538 F.3d at 372-73; *see also St. Paul Ins. Co. v. Texas Dep't of Transp.*, 999 S.W.3d 881, 886-87 (Tex. App. — Austin 1999, pet. denied) (rejecting proposed construction of professional services exclusion that would negate any coverage under express "additional insured" clause).

However, even if the Plaintiff's argument did not require the Court to find there would never be any coverage for the work ETOPSI did, it should be rejected because the narrow interpretation of such exclusions that applies under Texas law shows it does not apply here.

Under Texas law, a professional liability exclusion applies only if the loss complained of was the product of the breach of some professional standard, not some negligence in connection with physical performance of some task or other acts of negligence. *Utica Nat'l Ins. Co. of Tex. v. American Indem. Co.*, 141 S.W.3d 198, 201-02 (Tex. 2004). In fact, in order for a professional liability exclusion to preclude coverage, the loss must have been the but-for product of a professional breach. *Utica Nat'l Ins.*, 141 S.W.3d at 203; *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 427 (5th Cir. 2016). Therefore, when the loss was even the product of mixed causes, professional and non-professional, the exclusion does not apply. *National Cas. Co. v. Western World Ins. Co.*, 669 F.3d 608, 615 (5th Cir. 2012); *Essex Ins. Co. v. McFaddin*, 6:09-cv-193, 2010 WL 2246293 at * 6-7 (E.D. Tex. June 3, 2010).

Just such a mixture of performance exists here. Even if the Court assumes ETOPSI had to use professional skill to design the well, the complaint is not that the well was improperly designed, but that it was not drilled deep enough. Exhibit A. Knowing how far down the hole to drill before installing the casing is not a matter of the exercise of professional judgment, it is a matter of basic math. McBride's complaint is not the ETOPSI did not know it needed to drill the well down into the Woodbine strata, or that it designed a well that could not do what it was supposed to do, but rather that ETOPSI did not get there, stopping too soon. In a case closely on point, the court held that where claims were based on an alleged failure to prepare drilling plans properly, but also on the negligent drilling, constructing and operation of the drill, a professional liability exception did not apply.

9

*Willbros RPI, Inc. v. Continental Cas. Co.*, 601 F.3d 306, 311-12 (5th Cir. 2010). Under these similar circumstances, where the negligence complained of was based on the failure to drill deep enough, these physical acts and omissions are the basis of the claim, and so the professional liability exclusion does not apply.

    2.    <u>Exclusion for Damage to Real Property</u>

Next, the Plaintiff contends it is not required to cover any loss caused by ETOPSI because the loss is to "that particular part of real property on which [ETOPSI or its contractors were] working directly or indirectly on," if the damage arise out of these operations. Doc. 1, ¶¶ 17, 25-28. Again, this exclusion does not apply under the facts.

In order for this section to apply, the claim must: (1) be based exclusively on damage caused to something on which ETOPSI was working, *Scottsdale Ins. Co. v. Mid-Continent Cas. Co.*, A-17-CV-191-LY, 2018 WL 5733179 at * 6-7 (W.D. Tex. July 5, 2018); and (2) the damage is the direct result of the insured's current operations on the real property. *Dallas Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 224 (Tex. App. — Dallas 2015, no pet.); *CU Lloyd's of Tex. v. Main St. Homes, Inc.*, 79 S.W.3d 687, 696 (Tex. App. — Austin 2002, no pet.); *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 213 (5th Cir. 2009).

This exclusion does not apply, because the damages claimed are not the direct result of ETOPSI's current operations. An example of such a case is where a contractor who was hired to turn off gas lines destroyed a number of concrete pads excavating the gas lines; the destruction to the pads was seen as being the direct result of the contractor's excavating

operations. *Admiral Ins. Co. v. Little Big Inch Pipeline Co., Inc.*, 523 F.Supp.2d 524, 541 (W.D. Tex. 2007). In contrast, the damages here are not wholly attributable to what ETOPSI did, but rather to what it did not do — it stopped digging too soon, resulting in a well that is too shallow to use. Damages cannot be a direct result of an insured's actions when the complaint is the insured did not act.

In addition the exclusion does not apply, because the "particular part" language recognizes that coverage must be determined with respect to the different aspects of the work being done, and so even if damage is caused as the contemporaneous result of the insured's negligence, it must still be damage to the "particular part" of the project the insured was working on. *Mid-Continent Cas. Co. v. Krolczyk*, 408 S.W.3d 896, 903-04 (Tex. App. — Houston [1st Dist.] 2013, pet. denied) (claim that road cracked because contractor had improperly laid the base was not precluded by this exclusion, where allegations were that damage was to road surface, and no claim was made that road surface was constructed negligently). This means that questions of coverage must be determined with respect to each thing that was damaged. *Mid-United Contractors, Inc. v. Provident Lloyds Ins. Co.*, 754 S.W.2d 824, 828 (Tex. App. — Fort Worth 1988, writ denied) (distinguishing between coverage for damage caused to brick panels, steel reinforcing rods behind panels and supporting brick). Here, the work done by ETOPSI consisted of a number of different particular parts: the design of the well, the overseeing of the work being done by those it hired, the actual digging of the well bore, the cementing in of the well bore after it was dug,

etc. Just like the road in *Krolczyk*, each of these different aspects are different parts of the work, for which coverage may or may not exist, and so the exclusion does not apply to any damages sought on portions of the project on which ETOPSI did not work, or where the damages are not a contemporaneous result of the work that it did.  ETOPSI was not the driller, they told the driller to stop too soon or to set the pipe too high.

       3.     <u>Existence of "Property Damage" After an "Occurrence"</u>

The Plaintiff's third argument is its most broad — that, without regard to any exclusions, there is no coverage under the policy, because there is no "property damage" that was caused by an "occurrence" that would be covered under the policy. Doc. 1, ¶¶ 29-33. According to the Plaintiff, McBride seeks "economic damages," and economic damages are not property damages, *Id.*, ¶ 31, and there has been no "occurrence," within the meaning of the policy. This claim is also not correct.

First, it is not clear what the Plaintiff thinks "economic damages" are, or why the fact damages are "economic" precludes coverage. Under the policy, "property damage" is defined to mean "[p]hysical injury to tangible property," and to include "all resulting loss of use of that property." Exhibit B. Neither McBride's underlying lawsuit nor the policy makes any mention of "economic damages," and Texas law's definition of economic damages makes clear they compensate for actual pecuniary losses, as distinguished from what the law defines as non-economic damages that have no objective measure (things like pain and suffering, disfigurement, etc.) and exemplary damages. *Toyota Motor Co. v. Cook*, 581 S.W.3d 278,

289 (Tex. App. — Beaumont 2019, no pet.); *Critical Path Resources, Inc. v. Cuevas*, 561 S.W.3d 523, 561 (Tex. App. — Houston [14th Dist.] 2018), *supp.*, 582 S.W.3d 348 (Tex. App. — Houston [14th Dist.] 2018, pet. filed). Although at times losses that do not qualify as property damage have been described as "economic," *see, e.g., National Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 649 F.Supp.2d 613, 646-47 (S.D. Tex. 2009), *aff'd*, 454 Fed.Appx. 291 (5th Cir. Nov. 28, 2011) (rejecting insurer's argument that damages were not property damages, and so economic loss suffered by victim was not covered by policy), nothing precludes a "[p]hysical injury to tangible property," and any resulting loss of use (which is covered by the Plaintiff's policy) from also being economic damages under this definition, and so nothing precludes these damages (even if the Court assumes they are "economic damages," as the Plaintiff claims), from being covered under the policy.

The damages McBride seeks to recover are also the result of an "occurrence," defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Exhibit B. As the use of the term "accident" indicates, an occurrence is an event that is not the product of a deliberate decision by the insured to act a particular way, while an act done intentionally does not qualify. *Huffhines v. State Farm Lloyds*, 167 S.W.3d 493, 497-98 (Tex. App. — Houston [14th Dist.] 2005, no pet.); *Bituminous Cas. Corp. v. Kenworthy Oil Co.*, 912 F.Supp. 238, 241 (W.D. Tex.), *aff'd*, 105 F.3d 656 (5th Cir. 1996). In fact, it is against Texas public policy to cover with insurance an act done intentionally, to prevent wrongdoers from benefitting from their wrong. *Decorative*

*Ctr. of Houston v. Employers Cas. Co.*, 833 S.W.2d 257, 260 (Tex. App. — Corpus Christi 1992, writ denied).

Here, McBride does not assert, and does not believe, that ETOPSI acted intentionally in stopping drilling operations before the well reached the property depth. In fact, it has plead the opposite — that ETOPSI's actions were negligent, Exhibit B, negligence being the opposite of intentional, and the equivalent of an accident. *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 692-93 (5th Cir. 2010); *Scottsdale Ins. Co. v. Sessions*, 331 F.Supp.2d 479, 485-86 (N.D. Tex. 2003), *aff'd*, 108 Fed.Appx. 909 (5th Cir. Sept. 9, 2004). If the injury ETOPSI caused in this case was not done intentionally, it is an "occurrence" under the policy, which should therefore cover the loss.

    4.    Exclusion for Pollution

The next exclusion that Plaintiff argues that means ETOPSI is not covered for any negligence it may commit is the pollution exclusion. Doc 1, ¶¶ 19, 34-37. In relevant part, this exclusion would deny coverage for loss "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'," so long as the escape of the pollutants was from a site "owned or occupied by, or rented or loaned to, any insured." Exhibit B. This exclusion does not apply under the facts, again for several reasons.

First, while ETOPSI was certainly present at the drilling site, the drilling site was not, therefore, "occupied" by it in a way that falls under the exclusion. In order for a site is "occupied" by an insured, the insured must do more than "take up space" — his mere

presence somewhere is insufficient. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998). Rather, in the context of a pollution exclusion, property is "occupied" when it is held or kept for use *by the insured. Kelley-Coppedge*, 980 S.W.2d at 467; *Liberty Mut. Fire Ins. Co. v. Lexington Ins. Co.*, 446 S.W.3d 835, 841-44 (Tex. App. — San Antonio 2014, no pet.) ("occupancy" does not occur when insured is "merely conducting operations on the property for the benefit of the owner"). That is not what happened here — the petition makes clear the lease on which the well was being drilled was McBride's, and that ETOPSI's involvement with the work was solely as a contractor, conducting operations for McBride's benefit. Exhibit A. As such, ETOPSI did not occupy the property.

Nor was there any release, discharge or dispersal of any pollution, as required by the policy for the exclusion to apply. Even if the Court assumes that well drilling fluids can be a pollutant, they are not a pollutant when they are where they are supposed to be, doing what they are supposed to do, i.e., down the well bore of a mineral well that is being drilled. McBride suspects Texas well drillers and operators were be very surprised to learn that the proper use of drilling fluids qualifies as "pollution," or that putting these fluids down a well bore qualifies as their discharge, in a way that invalidated their insurance coverage. Of course, the law is different: where the claim involves chemicals or the like that might otherwise qualify as pollutants, but these chemicals are where they are supposed to be, a pollution exclusion does not apply because the has not been an actual or threatened "discharge, dispersal, seepage, migration, release or escape." *Burlington Ins. Co. v. JC*

*Instride, Inc.*, 30 F.Supp.3d 587, 596 (S.D. Tex. 2014); *see also Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565, 573 (Tex. App. — San Antonio 2002, pet. denied) (holding that a pollutant has been dispersed when it has been broken up or scattered about).

Finally, for the pollution exclusion to apply, the injury complained of has to have been caused by the pollution, and the exclusion does not preclude coverage for other kinds of damage. *Federal Ins. Co. v. Northfield Ins. Co.*, 837 F.3d 548, 553-54 (5th Cir. 2016) (pollution exclusion would not preclude coverage for environmental damage, such as soil erosion). Here, McBride's primary complaint is that the well was not drilled to the proper depth, and cannot be fixed. Exhibit A. In fact, the only mention of the drilling fluids is that they were injected into the wellbore, and that they "reached the area near the geologic formation desired," *Id.*, i.e., the well was not deep enough. Nothing in this claim implicates the pollution exclusion from the Plaintiff's policy.

5.   Other Claimed Exclusions

Finally, the Plaintiff seeks declarations regarding a number of separate exclusions it claims applies, but which it does not think enough of to enumerate as separate claims. Doc 1, ¶¶ 38-46. McBride will address each of these in turn, briefly.

—   Exclusion for "Contractual Liability"

The Plaintiff's policy contains an exclusion for liability that exists "by reason of the assumption of liability in a contract." Doc. 1, ¶ 17. This exclusion, in turn, does not apply if ETOPSI would be liable "in the absence of the contract or agreement." *Id.* Although the lack

16

of any explanation means the Court and McBride are left to guess, the Plaintiff apparently believes that because there was a contract between ETOPSI and McBride for the drilling of a well, that coverage is excluded. This is not the case.

This section simply does not apply, the exclusion the Plaintiff cites applies only when the insured contracts to assume liability for the conduct of a third party (such as an indemnity or hold harmless agreement, *Ingalls Shipbuilding v. Federal Ins. Co.*, 410 F.3d 214, 222 (5th Cir. 2005)), not when it is sought to be made liable for its own conduct. *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 726-27 (5th Cir. 1999); *E&R Rubalcava Constr., Inc. v. Burlington Ins. Co.*, 148 F.Supp.2d 746, 750 (N.D. Tex. 2001). However, even if this were not the case, the fact ETOPSI has been sued for, and can be liable in, negligence means this section would not apply, the insured being liable for some reason other than its contract with McBride. *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 844-45 (Tex. App. — Dallas 2004, pet. denied); *Aetna Cas. & Sur. Co. v. Metropolitan Baptist Church*, 967 F.Supp. 217, 221 (S.D. Tex. 1996); *see also Insurance Co. of N. Am. v. McCarthy Bros. Co.*, 123 F.Supp.2d 373, 377-78 (S.D. Tex. 2000) (fact insured settled negligence claim did not implicate exclusion for contractual liability). This exclusion does not apply and, even if it did, the exception to the exclusion means coverage is reimposed.

— <u>Exclusion for Property Loaned to Insured</u>

The policy does not cover damage to property that has been "loaned" to the insured. Doc 1, ¶ 17. This exclusion is so obscure McBride was unable to find any Texas authority

discussing it. However, given the term "loaned" its ordinary meaning, there is nothing to suggest this case involves loaned property, or that the well was (or even conceptually could have been) "loaned" to ETOPSI, or to anyone else.

— <u>Exclusion for Personal Property Controlled by the Insured</u>

The policy also does not cover losses to personal property in the case, custody or control of the insured. *Id.* What qualifies as personal property is defined by exclusion: "real property" means land, *San Antonio Area Fnd. v. Lang*, 35 S.W.3d 636, 640 (Tex. 2000); *City of San Antonio v. Parra*, 185 S.W.3d 61, 63 (Tex. App. — San Antonio 2005, no pet.), and real property is distinguished from "personal property," defined as anything that is not real property. *Lang*, 35 S.W.3d at 640; *Erwin v. Steele*, 228 S.W.2d 882, (Tex. Civ. App. — Dallas 1950, writ ref'd n.r.e.). As is the case with borrowed property, nothing in McBride's petition mentions, or seeks recovery for, damage to, any personalty controlled by ETOPSI.

— <u>Exclusion for Work that Requires Repair</u>

The Plaintiff next cites a provision excluding coverage for damage to property that "must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Doc. 1, ¶ 42. In citing this exclusion, the Plaintiff ignores the exception to this exclusion, called the "products-completed operations hazard" (sometimes referred to as "PCOS"), which allows (in relevant part) coverage for damages that occur away from the insured's premises, when the whole of the work being done by the insured has not yet been completed. Exhibit B.

This omission may have been intentional, as it is clear that work that has not been finished by the insured cannot be excluded from coverage under this provision. *Houston Bldg. Svc., Inc. v. American Gen. Fire & Cas. Co.*, 799 S.W.2d 308, 310 (Tex. App. — Houston [1st Dist.] 1990, writ denied); *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, A.SA04CA-192-XR, 2005 WL 1123759 at * 5 (W.D. Tex. Apr. 21, 2005), *aff'd*, 557 F.3d 207 (5th Cir. 2009). As set forth above, ETOPSI was not working on its property, but rather on McBride's mineral lease, and McBride's fundamental complaint is that ETOPSI did not complete the work, that it did not drill deep enough. Under the facts, this exclusion cannot apply, as a matter of law.

—    Exclusion for Damages to "Your Product"

An analysis similar to that used for the personal property exclusion applies to the exclusion for damage caused to "your product," defined to mean the "goods or products, other than real property" the insured made or sold. Doc 1, ¶ 17. This exclusion applies when the insured sells something, not when it provides services or does work on property qualifying as real property. *Building Specialties, Inc. v. Liberty Mut. Fire Ins. Co.*, 712 F.Supp.2d 628, 646-47 (S.D. Tex. 2010) (exclusion applied to sale of insulation for HVAC system). Again, this is not a case where ETOPSI sold anything other than its (supposed) supervision on the work done to drill a well. The case does not involve any "product," within the meaning of this exclusion, which does not apply.

— <u>Exclusion for Damages to "Your Work"</u>

The next exclusion the Plaintiff tries to rely on excludes coverage for property damage caused by "your work," generally defined to mean work done by the insured. Doc. 1, ¶ 44. The purpose of this provision is to prevent CGL policies from becoming a general performance bond for the work done by the insured. *Wilshire Ins. Co. v. RJT Constr., LLC*, 581 F.3d 222, 226 (5th Cir. 2009).

However, this exclusion does not apply to damages caused to things other than the actual work done by the insured. *Krolczyk*, 408 S.W.3d at 902. Nor does this provision, by its terms, apply to work done for ETOPSI, "by a subcontractor." Exhibit A. Here, the "work" done was the drilling of a well, but this does not qualify as "your work" for ETOPSI, because the actual drilling, on which the suit was based, was done by a contractor hired by ETOPSI. If ETOPSI had drilled the well this argument might have more merit, but, because it did not, the exclusion does not apply according to its terms.

— <u>Exclusion for Property Impaired by Insured's Work</u>

At long last we come to the final exclusion the Plaintiff claims applies, which excludes coverage for damage "impaired property" arising out of inadequate or defective performance of "your product" or "your work." Doc. 1, ¶ 45.

As set forth above, ETOPSI had no "product." The "work" complained of was done by another, albeit under ETOPSI's supervision. As such, there is neither "product" nor "work" that can be incorporated into anything, and therefore there can be no "impaired

property," under the definition used in the Plaintiff's policy. Exhibit B. Alternatively, if the project involved damage to ETOPSI's work, then the well itself cannot qualify as "impaired property," and so the exception would not apply in that case, either. *In re ML & Assoc., Inc.*, 302 SB.R. 857, 861 (Bankr. N.D. Tex. 2003). Finally, even if none of these things were true, this exception does not apply by its terms if the damage arises out of a sudden and accidental physical injury, which happened here, where the claim is ETOPSI negligently failed to complete the well to the proper depth, the cause of the claim.

WHEREFORE, PREMISES CONSIDERED, McBride prays the Court enter a summary judgment in its favor and against the Plaintiff on the issue of coverage, and find the exclusions relied on by the Plaintiff do not apply.

In the alternative, McBride prays the Court prays the Court enter summary judgment in its favor and against the Plaintiff, finding that any of the exclusions the Court finds inapplicable do not preclude coverage, if not on all such exclusions.

McBride for such other and further relief, general or special, in law or in equity, to which it may prove themselves to be justly entitled.

Respectfully submitted,

**ADKISON LAW FIRM**
300 West Main
Henderson, Texas 75652
Telephone: (903) 657-8545
Telecopier: (903) 657-6108
nancy@adkisonlawfirm.com

By: /s/ Ron Adkison
     Ron Adkison
     State Bar No. 00921090

Attorney for McBride

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing Motion for Summary Judgment has been served on all counsel of record through the Court's CM/ECF system on this, the 18th day of May, 2020.

/s/ Ron Adkison
Ron Adkison