UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:19-cv-00413

**Kinsale Insurance Company,**
*Plaintiff,*

v.

**ETOPSI Oil & Gas LLC, dba East Texas Oilfield Productions SVC, Inc., and McBride Operating, LLC,**
*Defendants.*

### ORDER

This case arises from an insurance dispute. Defendant McBride hired defendant ETOPSI as a consultant for the design and construction of a new injection well. But, once constructed, this well was approximately 200 feet too shallow to reach the desired subterranean geological formation. Efforts to expand the well's depth were unsuccessful and the well is now considered valueless. In addition, McBride contends that ETOPSI "caused various fluids, muds, and other substance to be injected into the wellbore," which reached the area near the geological formation. Doc. 36-4. McBride then sued ETOPSI in state court for this error. *See McBride v. ETOPSI*, 4th Judicial District of Rusk County, Cause No. 2018-175.

Plaintiff is Kinsale Insurance Company. At the time that ETOPSI designed McBride's well, Kinsale provided ETOPSI with insurance coverage under a general liability policy. Doc. 1-2. After McBride filed its case against ETOPSI in Texas state court, Kinsale filed this action seeking declaratory judgment that its liability policy does not require coverage. Before the court now are the parties' cross-motions for summary judgment. Docs. 35 & 36.

On cross-motions for summary judgment, the court examines each party's motion "independently, with evidence and inferences taken in the light most favorable to the nonmoving

party." *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005). Cross-motions for summary judgment do not necessarily warrant the granting of summary judgment. The court will grant a motion only if one of the parties is entitled to judgment as a matter of law. *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). Indeed, cross-motions for summary judgment may reveal "a genuine dispute as to material facts as often as not." *Bricklayers, Masons & Plasterers Int'l Union of Am., Local Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). As with all motions for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Texas law governs Kinsale's declaratory judgment claim. *See Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (holding that federal courts must apply state substantive law in diversity actions). In declaratory relief actions concerning insurance coverage, Texas follows the eight-corners rule. *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011) (*citing Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009)). Under this rule, the facts alleged in the underlying lawsuit and the terms of the policy will determine the insurance company's duty to defend. *Id*. A party's "'duty to defend' arises only when the facts alleged in the [underlying lawsuit], if taken as true, would potentially state a cause of action falling within the terms of the policy." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). If there is "doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

More specifically, the eight-corners rule requires that, if the underlying complaint "does not allege facts within the scope of coverage, [then] an insurer is not legally required to defend a suit against its insured." *Merchs. Fast*, 939 S.W.2d at 141. Indeed, "the court must focus on the factual allegations that show the origin of the damages," and not on the causes of action. *Id*. ("It is not the cause of action alleged that determines coverage but the facts giving rise to the alleged actionable conduct.").

The insured bears the initial burden of establishing coverage under a policy. *Sentry Ins. v. R.J. Weber Co.*, 2 F.3d 554, 556 (5th Cir. 1993). If the insured meets its burden, then "the insurer must prove the loss is within an exclusion." *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). Then, if the insurer meets this burden, "the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *Id*.

Kinsale contends that its insurance policy does not cover ETOPSI's well for two reasons. First, it argues that the policy's insuring agreement is not satisfied, and therefore the agreement does not apply. Second, and to the extent that McBride and ETOPSI has established coverage in the first instance, Kinsale identifies various exclusions to coverage, which it argues, apply here.

The policy's insuring agreement states that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply."

Doc 1-2. This agreement defines "property damage" as either:

> (a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id*.

Specifically, Kinsale argues that it denied coverage to ETOPSI because McBride did not assert claims for "bodily injury" or "property damage" as required by the insuring agreement. In support of this position, Kinsale primarily relies on *PPI Tech. Servs., L.P. v. Liberty Mut. Ins. Co.*, 515 F. App'x 310 (5th Cir. 2013). In *PPI Tech*, defendant provided plaintiff with a commercial general liability policy, substantially similar to the one at issue here. *Id.* at 311. Plaintiff, like ETOPSI, works in well-drilling. *Id*. Due to a mistake allegedly attributable to plaintiff, a third-party landowner sued plaintiff for drilling a well in the wrong location and alleged that plaintiff caused "property damage" as a result. *Id.* at 312. Plaintiff then sought coverage under its commercial policy with defendant, which defendant denied. *Id*. The Fifth Circuit held that, notwithstanding the use of "property damage" in the underlying complaint, the plaintiff in that action had not asserted actual claims for "property damage." *Id.* at 314. Instead, the court explained, the underlying complaint sought economic damages and contained "no factual allegations of actual damage to or loss of tangible property." *Id*.

In response, McBride contends that *PPI Tech*, and other cases that Kinsale identifies, differ in one crucial respect. McBride argues that the well in *PPI Tech* caused only economic damages because it was a functioning, live well and that the well here is incapable of production. It explains that "[a] working well that is not allowed to produce because it is

in trespass may well result in solely economic damages, but a non-working well that cannot produce does not [result solely in economic damages], if the reason it is not working is because of a physical injury to the tangible property that is the well." Doc. 42.

On this issue, Kinsale's argument is incorrect. Unlike the well in *PPI Tech*, ETOPSI's well did deprive McBride of the use of property. As Kinsale acknowledges in its own motion: "McBride attempted to rework the well to a deeper depth, but that proved unsuccessful." Doc. 36. In its underlying action, McBride similarly alleges that "physical injury to the earth caused by [ETOPSI] has prevented the use of the wellbore." The presence of a non-functioning well on McBride's land is an injury to property. Doc. 36-4. Thus, this situation is materially different from *PPI Tech* and similar cases,[1] and the valueless well constitutes a physical injury to tangible property.

Next, Kinsale argues that, if installation of the non-functioning well is property damage, then various policy exclusions disclaim coverage. As noted above, the party asserting an exclusion has the burden of establishing the applicability of that exclusion. *See Gilbert Texas Const.*, 327 S.W.3d at 124.

Although Kinsale identifies several exclusions, the court will address only one—exclusion j(5), damage to real property. In relevant part, this exclusion provides that "[t]his insurance does not apply to . . . 'property damage' to . . . [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations[.]" Doc. 1-2. Kinsale contends

---

[1] One court has held that the installation of a faulty well cannot be a "loss of use of tangible property" unless the well had been in use before the breach. *Cook v. Admiral Ins. Co.*, No. 2:09-CV-0109-J, 2010 WL 2605256 (N.D. Tex. June 29, 2010). This court does not endorse that view, and notes that the Fifth Circuit did not address this view on appeal. *See Cook v. Admiral Ins. Co.*, 438 F. App'x 313, 316-17 (5th Cir. 2011).

that this exclusion applies to ETOPSI's well, and it identifies several cases where courts have reached a similar conclusion.

McBride, however, argues that this exclusion requires "action" and does not apply when the underlying claim alleges only "inaction." More specifically, McBride states that "the damages here are not wholly attributable to what [ETOPSI] did, but rather are entirely attributable to what it did not do—it stopped running pipe too soon, resulting in a well that is too shallow to use." Doc. 42. It then concludes that "[d]amages cannot be a direct result of [ETOPSI'] actions when the complaint is [ETOPSI] did not act." *Id.*

ETOPSI's response to Kinsale's motion, Doc. 43, argues that McBride's state court petition establishes "at least a potential that McBride's allegations fall within the policy's scope of coverage," because the parties dispute whether the property damage occurred during "the performance of the operations." *Id*. (*quoting* Doc. 1-2). Instead, ETOPSI contends, the focus must be "on the time of the actual physical damage to the property, and not the time of the 'negligent conduct' or the 'process . . . that later results in' the damage." *Id.* (*quoting Gonzalez v. Mid-Continent Cas. Co.*, 5:18-CV-150-C, 2019 WL 7879751, at *4 (N.D. Tex. Apr. 16, 2019)). Specifically, ETOPSI argues that because McBride's allegations in its state court petition[2] do not establish the "time of actual damage," the court must resolve this doubt in favor of a duty to defend. Doc. 43 (*quoting Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008)).

The court finds McBride's contention unpersuasive. The Fifth Circuit previously considered a nearly identical argument and concluded that "the 'property damage,' i.e., the completion of the well at an incorrect depth, undeniably arose out of [the company that designed and oversaw

---

[2] "Defendant caused various fluids, muds, and other structures to be injected into the wellbore. These substances reached the area near the geologic formation desired." Doc. 36-4.

construction's] operations; and it was precisely that well which had to be reworked because [of that same company's] negligence in retrieving too much casing from the site left an insufficient quantity of casing to reach the proper depth for completion." *Cook*, 438 F. App'x at 318 (5th Cir. 2011). The court finds that reasoning persuasive in this context.

The court finds ETOPSI's argument unpersuasive because it relies on inaccurately narrow constructions both of what McBride alleged ETOPSI's duties were and of the phrase "performing operations." ETOPSI frequently refers to itself as a "consultant" for the construction of McBride's well. Indeed, ETOPSI seemingly relies on the argument that its services ended when it "as consultant in the oil and gas industry, decided that the drilling on the McBride #1 was complete." Doc. 36-4. But if ETOPSI's role was limited to "consulting" on this project, no document within the eight-corners rule identifies that limitation. Although McBride's underlying petition does refer to ETOPSI as a "consultant" at various points, it more fully explains that "ETOPSI designed the injection well, engaged the drilling contractor, consulted with and advised the owner and the drilling contractor, decided the total depth of the hole, decided on how deep to set the casing and was in control of the drilling operation." *Id*.

With this added context, there is no genuine dispute about whether the alleged damage to McBride's physical property occurred during the performance of ETOPSI's operations. The underlying petition asserts that ETOPSI agreed to provide McBride with a functioning well and that ETOPSI failed to do so. The petition further asserts that ETOPSI completed a non-functioning well that damaged its property "on or about October 25, 2017." Doc. 36-4. The court must "focus on the factual allegations that show the origin of the damages," *Merchs. Fast*, 939 S.W.2d at 141, and McBride alleges that the "origins of [its] damages" are ETOPSI actions on or about October 25, 2017.

Kinsale has met its burden to establish the applicability of an exclusion on which there is no genuine issue of material fact. So the burden then shifts back to defendants to identify an exemption to this exclusion on which there is a genuine issue of material fact. But they have failed to do so. McBride and ETOPSI argue only that various exclusions do not apply, and they have not addressed any exceptions to those exclusions. Therefore, defendants have not carried their burden.

Thus, the court finds that exclusion j(5), damage to real property, applies to this dispute, and entitles Kinsale to declaratory judgment. Kinsale's motion for summary judgment (Doc. 36) is **granted**, and McBride's motion for summary judgment (Doc. 35) is **denied**.

*So ordered by the court on August 7, 2020.*

J. CAMPBELL BARKER
United States District Judge